UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FULGENCIO RODRIGUEZ,

                Petitioner,

v.                                                                               9:18-CV-0928
                                                                               (GLS/ML)

NEW YORK STATE DEPARTMENT OF PAROLE
AND COMMUNITY SUPERVISION,

                Respondent.
_____

APPEARANCES:                                                      OF COUNSEL:

FULGENCIO RODRIGUEZ
  Petitioner, *Pro Se*
425 West 205th Street, Apartment 6K
New York, New York 10034

New York State Attorney General                         PRISCILLA I. STEWARD,
  Counsel for Respondent                                            ESQ.
28 Liberty Street                                                                Assistant Attorney General
New York, NY 10005

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

      Petitioner Fulgencio Rodriguez, a former New York State prison inmate as the result of his 2014 conviction to criminal possession of a controlled substance, has commenced this proceeding pursuant to 28 U.S.C. § 2254, requesting habeas relief from this Court. In his petition, Rodriguez argues that (1) his plea to a parole violation was not knowing, voluntary, or intelligent because he had been misled about the length of the time assessment to be imposed, (2) he was denied effective assistance of counsel at the parole revocation hearing because counsel failed to accurately advise him about the consequences of the plea, and (3) the parole officer

caused a "predetermined or bias[ed] prejudicial decision." For the reasons set forth below, I recommend that the petition be denied and dismissed.

## I. BACKGROUND

### A. Petitioner's Conviction and Parole Violation

Fulgencio Rodriguez ("Petitioner"), was convicted on September 9, 2014, in Suffolk County Court, upon his plea of guilty to two counts of criminal possession of a controlled substance in the third degree. (Dkt. No. 12 at 116.) Petitioner was sentenced to two concurrent determinate prison terms of three-and-one-half years and three-years of post-release supervision on each count. (*Id*.) After participating in a shock incarceration program pursuant to Correction Law § 865, Petitioner was released to community supervision on May 21, 2015. (*Id*. at 124.) Petitioner was scheduled to reach the maximum expiration date of his sentence on May 21, 2018. (*Id*. at 116, 127, 132, 134.)

On June 30, 2015, Petitioner was charged with violating the conditions of his post-release supervision. (*Id*. at 132-33.) On June 16, 2016, Petitioner was arrested in Pennsylvania and extradited to New York. (*Id*. at 76-79.)

### B. Petitioner's Parole Revocation Proceedings

On August 26, 2016, Petitioner appeared for a revocation proceeding. (Dkt. No. 12 at 215.) At the hearing, the parole violator specialist ("PVS") stated on the record that because of the seriousness of the parole violation charges against Petitioner and because he absconded, he would not be offered restoration to the Willard drug treatment campus program.[2] (*Id*. at 217.)

---

[2]   At the time of Plaintiff's parole violation, revocation of parole for shock releasees was governed by 9 N.Y. C.R.R. § 8010.3(a), which states in pertinent part:

However, the PVS stated that if Petitioner pleaded guilty to charge one of the parole violation—which alleged that Petitioner failed to report to his parole officer—then the other charges would be withdrawn and Petitioner would be assessed the minimum term of imprisonment "which is thirty-one months," and that with credit for time served in custody, Petitioner would serve "approximately twenty-seven months." (*Id*.) In addition, the PVS stated that Petitioner would be credited for the period of time that he had absconded—approximately one year—such that with the applicable time credit, Petitioner would be required to serve "about seventeen months as of his lodge date of 6-16-2016." (*Id*.) Petitioner did not accept the plea and the matter was adjourned. (*Id*. at 222-224.)

Later in the same day, Petitioner's case was re-called and Petitioner appeared before a different administrative law judge ("ALJ"). (Dkt. No. 12 at 227.) The ALJ summarized the agreement reached by the parties noting that (1) Petitioner was a shock parolee, subject to shock regulations, (2) the Department of Parole would proceed only on charge one, which would be amended so that the delinquency date would change from June 30, 2015, to June 16, 2016, (3) the remaining charges would be withdrawn with prejudice, (4) there would be a joint recommendation that Petitioner be held in prison for the term of "his shock minimum, which our

---

when a releasee, under the jurisdiction of the division after having been paroled based upon his or her successful completion of the shock incarceration program, is found to have violated one or more of the conditions of parole in an important respect, the presiding officer shall make a decision in accordance with section 8005.20 of these rules . . . if a releasee is not restored to supervision or the Willard drug treatment campus program, and the presiding officer directs that the violator be reincarcerated, said period of reincarceration shall be for at least a period of time equal to the minimum period of imprisonment imposed by the court.

calculations indicate is 31 months," but that "[t]he ultimate calculation will be done by State Corrections upstate." (*Id*. at 231.) The PVS and Petitioner's counsel confirmed that the ALJ's recitation of the agreement was accurate. (*Id*.) Thereafter, Petitioner pleaded guilty to charge one of the violations in the release report, for failing to report to his parole officer. (*Id*. at 232.)

The ALJ accepted Petitioner's plea, stated that the remaining charges were withdrawn with prejudice, and declared Petitioner delinquent as of June 16, 2016, with "a hold to his shock minimum, which we calculat[e] to be about 31 months." (Dkt. No. 12 at 233.) Petitioner then asked, "Out of 31 months, I get 17 months?" (*Id*.) The record indicates that Petitioner then conferred with his attorney and the hearing concluded without any additional comments by Petitioner or his counsel. (*Id*.)

Petitioner filed an administrative appeal, which was denied. (Dkt. No. 12 at 155-213.)

**C.     Petitioner's Article 78 Petition**

On March 29, 2017, Petitioner filed a petition in New York State Supreme Court pursuant to N.Y. C.P.L.R. Article 78, wherein he argued that (1) his plea was not knowing and voluntary because he had not agreed to the imposed time assessment, (2) the time assessment was excessive and he should have been sent to the Willard drug treatment campus, and (3) his due process rights were violated when the time assessment was imposed without a hearing. (Dkt. No. 12 at 15-36.) New York State Supreme Court denied the Article 78 petition and held that Petitioner's plea was knowing, voluntary, and intelligent because (1) the ALJ "very clearly placed the offer on the record, noting that the Petitioner would be held to his shock minimum, estimated to be 31 months, but that ultimately the calculation would be done by" State Corrections officials; and (2) any confusion on Petitioner's part was "not . . . the result of the ALJ's failure to make the offer clear" and "should have been cleared up with the assistance of

4

counsel." (*Id*. at 87-89.)  In addition, the court rejected Petitioner's claim that the time assessment was excessive because he received the minimum period of imprisonment as required by 9 N.Y. C.R.R. § 8010.3(a) and the terms of his plea agreement.  (*Id*.)

Petitioner appealed the denial of his Article 78 petition arguing that (1) his plea was not knowing and voluntary because he had not agreed to the imposed time assessment, (2) his due process rights were violated when the time assessment was imposed without a hearing, (3) he was denied the assistance of effective counsel because counsel failed to advise Petitioner that he would be incarcerated for 31 months, and (4) the time assessment was excessive and he should have been sent to the Willard drug treatment campus.  (Dkt. No. 12 at 294-316.)

On June 8, 2018, the New York State Appellate Division, Fourth Department, unanimously affirmed the decision "for the reasons stated in the decision at Supreme Court." *Rodriguez v. Stanford*, 162 A.D.3d 1557 (N.Y. App. Div. 4th Dep't 2018).  Petitioner sought leave to appeal to the New York Court of Appeals, which was denied.  (Dkt. No. 12 at 350-59); *Rodriguez v. Stanford*, 32 N.Y.3d 904 (N.Y. 2018).

### D.     Proceedings in this Court

Petitioner commenced this proceeding August 6, 2018.  (Dkt. No. 1.)  In his petition, Petitioner asserts the following three grounds for habeas relief: (1) his plea to a parole violation was not knowing, voluntary, or intelligent because he had been misled about the length of the time assessment to be imposed; (2) he was denied effective assistance of counsel at the parole revocation hearing because counsel failed to accurately advise him about the consequences of the plea; and (3) the parole officer caused a "predetermined or bias[ed] prejudicial decision." (*See generally id.*)  On November 21, 2018, Respondent filed an answer to the petition, accompanied by a compilation of the relevant state court records, helpfully organized and indexed for the

convenience of the court and the parties. (Dkt. Nos. 11, 12.) This matter, which is now fully briefed, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## II.  GOVERNING LEGAL STANDARDS

### A.  Standard Governing Review of a *Habeas Corpus* Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (Sotomayor, J.). The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 563 U.S. at 181. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was

incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001); *see Willson v. Sellars*, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state-court decision on the merits "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning," but that "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision").

### B.     Legal Standard Governing Exhaustion of Remedies

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately protect his rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at the

core of the exhaustion requirement."). Although both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Galdamez*, 394 F.3d at 72 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been "'fairly present[ed]'" to the state court. *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state court was apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192.

Significantly, "[t]he exhaustion doctrine 'requires only that a petitioner present his claim once on direct or collateral review.'" *Salahuddin v. Strack*, 97-CV-5789, 1998 WL 812648, at *5 (E.D.N.Y. Aug. 12, 1998) (quoting *Sanford v. Senkowski*, 791 F. Supp. 66, 69 (E.D.N.Y. 1992)); *see Fielding v. LeFevre*, 548 F.2d 1102, 1106 (2d Cir. 1977) ("In order to meet the exhaustion requirement, a petitioner must have presented his claim to the state courts at least once, on direct or collateral review."). "Therefore, even if a claim is not raised at trial or on direct appeal, a claim pursued throughout a full round of state post-conviction proceedings is exhausted." *Salahuddin*, 1998 WL 812648, at *5 (citing, *inter alia, Castille v. Peoples*, 489 U.S. 346, 350-51 (1989)); *see also Harvey v. Portuondo*, 98-CV-7371, 2002 WL 2003210, at *5 (E.D.N.Y. Aug. 5, 2002).

8

C.      **Legal Standard Governing Guilty Pleas**

The standard governing the acceptance of guilty pleas is neither recently evolved nor controversial. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citations omitted)); *see also Parke v. Raley*, 506 U.S. 20, 28-29 (1992) (plea is valid when it is both knowingly and voluntarily made); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be intelligently and voluntarily entered). A knowing plea is entered "'with understanding of the nature of the charge and the consequences of the plea.'" *Santobello v. New York*, 404 U.S. 257, 261 n.1 (1971) (quoting Fed. R. Crim. P. 11); *see Martinez v. Costello*, 03-CV-2763, 2004 WL 26306, at *5 (S.D.N.Y. Jan. 5, 2004) (citing *Santobello* and Fed. R. Crim. P. 11); *see also Hanson v. Phillips*, 442 F.3d 789, 798 (2d Cir. 2006).

Applying this standard, to establish that a criminal defendant's guilty plea was knowingly, intelligently, and voluntarily entered the court must find, based upon the record of the relevant plea proceedings, that he or she (1) was competent to proceed and was fully aware of the nature of the charges faced; (2) had a rational and factual understanding of the proceedings; and, (3) was cognizant of the constitutional protections relinquished upon entry of the plea. *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004); *Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir.), *cert. dismissed*, 479 U.S. 805 (1986). While "the question of whether a plea of guilty has been entered voluntarily within the meaning of the Constitution is often a complex one that involves mixed questions of law and fact[,]" the ultimate issue of whether a plea represents an

9

effective waiver of federal Constitutional rights is controlled by federal law. *Oyague*, 393 F.3d at 104.

### D. Legal Standard Governing Ineffective Assistance of Counsel

Under the well-established standard governing ineffective assistance of counsel claims,

> the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Wash.*, 466 U.S. 668, 687 (1984); *accord, Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007).

To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690; *accord, Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015). An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort made to "eliminate the distorting effects of hindsight[.]" *Strickland*, 466 U.S. at 689; *see also Rivas*, 780 F.3d at 547 (quoting *Strickland*, 466 U.S. at 689) (noting the court's "scrutiny of counsel's performance must be 'highly deferential'").

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that, but for the attorney's deficient conduct, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *see also Murden*, 497 F.3d at 198 ("Under *Strickland*, a defendant must show that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation marks omitted)).

It is well-established that a voluntary guilty plea that is knowingly, intelligently, and voluntarily entered constitutes a waiver of non-jurisdictional defects occurring prior to entry of the plea. *See United States ex-rel. Glenn v. McMann*, 349 F.2d 1018, 1019 (2d Cir. 1967). As the Supreme Court has explained, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see United States v. Coffin*, 76 F.3d 494, 497-98 (2d Cir. 1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."); *see also Morris v. Smith,* 13-CV-1441, 2015 WL 13745077, at *5 (Jul. 29, 2015) (Treece, M.J.), *report and recommendation adopted by*, 2016 WL 4532160 (N.D.N.Y. Aug. 30, 2016) (Sharpe, J.); *Conyers v. McLaughlin*, 96-CV-1743, 2000 WL 33767755, at *7 (N.D.N.Y. Jan. 27, 2000) (Sharpe, J.).

### III.    ANALYSIS

For the reasons stated in Respondent's memorandum of law, I find that Petitioner's plea to the parole violation was entered knowingly, voluntarily, and intelligently[5] and he was represented by effective counsel.[6] (Dkt. No. 11, Attach. 1 at 9-16.) Further, for the reasons

---

[5] In addition, as Respondent identifies, "since the parole revocation procedure does not require the full panoply of rights a criminal defendant would require, the petitioner may not need to have a knowing and voluntary waiver of his rights in entering that plea." *Hill v. Artus*, 10-CV-558A, 2011 WL 474141, at *6 (W.D.N.Y. Jan. 13, 2011) (citing *Scales v. New York State Div. of Parole*, 396 F. Supp. 2d 423, 432 (S.D.N.Y. 2005)).

[6] Moreover, "[t]here is case law to support the proposition that federal habeas review is not available for [Petitioner]'s ineffective assistance claims because the Sixth Amendment right to effective assistance of counsel does not apply to parole revocation proceedings." *Thurman v. Allard*, 01-CV-8746, 2004 WL 2101911, at *15 (S.D.N.Y. Sept. 22, 2004) (citing *Riley v. Myers*, 01-CV-6958, 2002 WL 31845865, at *7 (E.D. Pa. Dec. 18, 2002); *Johnson v. Pa. Bd. of Prob. & Parole*, 02-CV-4632, 2003 WL 22845415, at *8 (E.D. Pa. Nov. 26, 2003); *Wallace v. Tex. Bd. of Pardons & Paroles*, 00-CV-0342, 2001 WL 360999, at *6 (N.D. Tex. Feb. 14, 2001)).

stated in Respondent's memorandum of law, I find that the time imposed for Petitioner's guilty plea to the parole violation, comported with the express terms of the plea agreement as explained by the ALJ. (*Id.*) In addition, for the reasons stated in Respondent's memorandum of law, I find that Petitioner's claim that his parole officer's bias caused an unfair outcome in his parole revocation hearing is unexhausted and this claim is procedurally defaulted because Petitioner no longer has any state-court remedies available. (*Id*. at 16-18.)

As a result, I recommend that the petition be dismissed and denied.[7]

---

[7]  The Court further notes that inasmuch as public records indicate that Petitioner was released from the challenged reincarceration arising from the 2016 parole revocation hearing (*see* DOCCS Inmate Lookup, http://nysdoccslookup.doccs.ny.gov (last visited July 26, 2021)), this petition may also be moot. *See Spencer v. Kemna*, 523 U.S. 1, 7-14 (1998) (holding that while "[a]n incarcerated . . . parolee's challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because . . . the incarceration . . . constitutes a concrete injury," where the substance of the suit is parole revocation and the resulting "reincarceration that . . . [occurred] as a result of that action is now over, and cannot be undone," the petitioner is required to demonstrate "collateral consequences adequate to meet Article III's injury-in-fact requirement [which] resulted from petitioner's parole revocation," in order for the petition to survive); *see also Ariola v. LaClair*, 08-CV-0116, 2014 WL 4966748, at *9 (N.D.N.Y. Sept. 30, 2014) (Sharpe, C.J.) (noting "that a prisoner challenging a parole revocation hearing is, at most, entitled to a rehearing, and so, a prisoner who has already served his sentence or who has been released ordinarily would not obtain any legal benefit from a determination that the parole revocation hearing was wrongly decided") (citing *Lebron v. Graham*, 09-CV-1021, 2010 WL 2771878, at *3 (N.D.N.Y. July 12, 2010) (Sharpe, C.J.)); *see also Fells v. Breslin*, 04-CV-03849, 2007 WL 675081, at *3 (E.D.N.Y. Feb. 26, 2007) (noting courts in this Circuit "have dismissed habeas petitions which challenged parole revocation because the petitioner was no longer in prison"). Here, Petitioner was released from custody on October 3, 2018, and the post-release supervision maximum expiration date was September 8, 2020. (*See* DOCCS Inmate Lookup, http://nysdoccslookup.doccs.ny.gov (last visited July 26, 2021)). In addition, Petitioner does not appear to have raised any injuries or collateral consequences which would allow his present petition to continue under *Spencer*. *See, e.g., Smith v. Smith*, 17-CV-0258, 2018 WL 557877, at *4 (N.D.N.Y. Jan. 22, 2018) (noting the petitioner's claims challenging a parole revocation were likely mooted by his release but also determining "engaging in such an analysis [was] fruitless because petitioner's claims were not properly exhausted and, even when deemed exhausted, [were] procedurally defaulted").

## IV.     CERTIFICATE OF APPEALABILITY

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[8] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

In this instance, I find that jurists of reason would not find it debatable as to whether the petition in this matter is meritorious. Accordingly, I recommend against the issuance of a COA.

**ACCORDINGLY**, it is

**RECOMMENDED** that the petition is **DENIED and DISMISSED**, and that a certificate of appealability not be issued to Petitioner; and it is further

---

[8]     A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: July 30, 2021
Binghamton, New York

*[signature]*
Miroslav Lovric
U.S. Magistrate Judge

---

[9] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).